NOT FOR PUBLICATION                                              (Doc. No. 60)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| VERONICA GRAVES, | : |
| Plaintiff, | : |
| v. | : Civil No. 10-369 (RBK/KMW) |
| ANCORA PSYCHIATRIC HOSPITAL | : **OPINION** |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Ancora Psychiatric Hospital ("Ancora") for summary judgment on pro se Plaintiff Veronica Graves's claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.[1] For the reasons that follow, Ancora's motion will be denied.

---

[1] Ancora also moves for summary judgment as to any claim of discrimination involving acts that occurred prior to October 25, 2007, and more than 300 days before Plaintiff filed her Charge of Discrimination with the EEOC. Ancora states that these claims are time barred and should be dismissed with prejudice and references this Court's December 12, 2012, Opinion on Ancora's earlier filed Motion to Dismiss. (Ancora Br. in Support of Mot. for Summ. J. ("Ancora Br.") 3-5.) In the December Opinion, the Court stated that because Plaintiff "filed her charge with the EEOC on August 20, 2008 . . . under the 300 day rule, she is barred from bringing suit concerning allegedly unlawful acts that occurred prior to October 25, 2007." (Doc. No. 30 at 10.) Accordingly, as these claims were previously dismissed as time barred, and thus dismissed with prejudice, this portion of Ancora's motion is moot.

Ancora also argues that summary judgment is proper as to Plaintiff's claim for "breach of the collective bargaining agreement." (Ancora Br. 11-14.) However, in reviewing Plaintiff's Complaint, styled as "Plaintiff's More Definite Statement," the Court does not construe Plaintiff's reference to a "collective bargaining agreement" as a separate cause of action. Rather, it appears that Plaintiff means to challenge her placement in a probationary period as violative of Title VII. (Doc. No. 26, Pl.'s More Definite Statement ¶ 4.) Indeed, Plaintiff's brief in opposition to Ancora's motion for summary judgment states:

> Plaintiff was hired prior to 2005 passed a probationary period and worked for the State of NJ for the next 3 years, as a HST and a promotional scheduler, so how was she not permanent, after joining the union (CWA) and union dues be drawn out of her pay, she applied for a pension, which continued until her

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

Plaintiff was previously employed by Ancora as a Nursing Services Clerk from 2002 until 2005.  (Ex. B to Ancora Br. in Support of Mot. for Summ. J. ("Ancora Br."), New Hires Processing Form.)  In 2005, Plaintiff was laid off from employment.  (Ex. C to Ancora Br., Letter from Donna L. Ingram, Human Resources Manager, to Plaintiff dated March 29, 2005.)  Two years later, on September 17, 2007, Plaintiff was rehired by Ancora as a Technical Assistant 3 ("Tech 3").  (Ancora Statement of Uncontested Material Facts ("Ancora SMF") ¶¶ 8, 13.)  Prior to her second employment with Ancora, Plaintiff had taken and passed the Civil Service Exam for the Tech 3 position.  (Ex. A to Ancora Br., Deposition of Veronica Graves ("Pl.'s

---

termination in 2008.  Employees benefits, specifically union representation and pension access, are prohibited to probationary employees.  Therefore plaintiff contends that this proves she was in fact a permanent employee, forced to go through an additional probationary period by the defendant and supervisor Vacca for the sole purpose of insuring, that she failed, by humiliating [and] denigrating [Plaintiff] and the manufacturing of a hostile work environment . . . .

(Pl.'s Opp'n Br. to Ancora Mot. for Summ. J. ("Pl.'s Opp'n Br.") 7.)  As an initial matter, to the extent Plaintiff meant to allege a separate cause of action based on a breach of "the collective bargaining agreement," she has simply failed to sufficiently allege, let alone set forth any evidence at this stage of the proceedings, that would support such a claim.  Although the Court has afforded Plaintiff great latitude in her pleadings due to her pro se status, there is nothing currently before the Court that would lead it to conclude that Plaintiff's claim is anything more than a claim for race discrimination under Title VII.  Indeed, Plaintiff has not provided anything to the Court that would lead it to conclude that her prior employment with Ancora as a Nursing Services Clerk somehow exempted her from the requirement that she again complete a probationary period once she was hired as a Tech 3, an entirely different role.  See, e.g., N.J. Admin. Code §§ 4A:4.5-1 et seq. ((a) "The working test period is part of the examination process designed to permit an appointing authority to determine whether an employee can satisfactorily perform the duties of the title.  (b) All regular appointments to a title in the career service shall be subject to a working test period, except: 1. Appointments from special, police and fire, and regular reemployment lists; 2. Appointments to a comparable or lower related title in lieu of layoff; 3. Appointments to titles previously held on a permanent basis within current permanent continuous service.") (emphasis added).  Not only would a claim premised on a breach of the collective bargaining agreement fail on these grounds, but so would a Title VII claim.  Accordingly, the Court evaluates Plaintiff's Title VII claim as one challenging her termination from employment.

[2] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the plaintiff.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

Dep.") 35:12-36:8.)    As a Tech 3, Plaintiff's responsibilities included, inter alia, the scheduling of nursing staff at Ancora and preparing reports regarding the same.

Plaintiff began her employment as a Tech 3 under a probationary period commencing on her start date and extending for four (4) months.  (Ex. G to Ancora Br., Memorandum from Kathleen Carr, Human Resources Manager to Plaintiff, dated Oct. 15, 2007.)  The probationary period could be extended up to six (6) months for cause.  (Id.)  Plaintiff was informed in these conditions of employment along with the fact that she would be receiving periodic "Reports of Progress on Probationer."  (Id.)  If, at the end of the probationary period, Plaintiff's "conduct and/or performance . . . [wa]s considered unsatisfactory," Plaintiff was informed that her "supervisor shall give you written notice and indicate that your services will be discontinued and the reasons for such action."  (Id.)

On November 18, 2007, Plaintiff's first Report of Progress on Probationer reflected a "satisfactory" rating.  (Ex. H to Ancora Br., Report on Progress of Probationer dated Nov. 18, 2007.)  On January 11, 2008, Doris Vacca, Senior Manager of Scheduling, met with Plaintiff to verbally review a copy of Plaintiff's second Report of Progress on Probationer.  (Exs. K (Memorandum by Doris Vacca, dated Jan. 11, 2008) and I (Report on Progress of Probationer, dated Jan. 18, 2007) to Ancora Br.)  Plaintiff received an "unsatisfactory" rating in this report.

In a memorandum, Vacca indicated that she tried to explain her concerns to Plaintiff and why she received an unsatisfactory performance review; however, when Plaintiff asked Vacca whether this meant she would be fired, and Vacca replied "no," Plaintiff "asked where to sign and walked away."  (Ex. K to Ancora Br.)  Vacca asked Plaintiff to sit down in order to "go over issues of concern," however, Plaintiff stated that "she did not want to talk and put on her coat . . .

3

[and] began to shout." (Id.) Plaintiff then asked how long her probation period would last, to which Vacca replied "2 months." Vacca also informed Plaintiff that if she did not perform her job, she would be terminated. (Id.)

In a memorandum discussing the reasons Plaintiff received an unsatisfactory rating, Vacca stated that Plaintiff had difficulty following directions since her start date, and this difficulty has led to other technicians correcting Plaintiff's work for her. (Ex. J to Ancora Br., Memorandum by Doris Vacca, dated Jan. 10, 2008.) As Plaintiff's responsibilities included staffing and scheduling for three wards, errors included "neglecting to schedule holidays, scheduling staff for more than 5 days in a row, and duplication of staff names on the schedules." (Id.) Plaintiff also ignored certain instructions and Vacca noted that there were complaints about her lack of cooperation. (Id.) Finally, Vacca noted that Plaintiff had attendance issues. (Id.)

Due to Plaintiff's performance, Vacca requested that Plaintiff's working test period be extended until March 17, 2008. (Ex. M to Ancora Br., Request for Extension of Working Test Period, dated Jan. 10, 2008.) This request was approved by the Department of Personnel on January 15, 2008. (Ex. L. to Ancora Br., Memorandum from Tina Bailey, Human Resources Personnel Assistant to Doris Vacca, dated Jan. 15, 2008.) Plaintiff acknowledged that her probation period was extended in order to improve her work product. (Pl.'s Dep. 55:20-56:5.)

During the extended probationary period, Plaintiff received two Reports of Progress on Probationer, one dated February 17, 2008, and the other dated March 17, 2008. (Ancora SMF ¶ 25.) Both of these reports reflected an "unsatisfactory" rating. (Exs. N (Report on Progress of Probationer, dated Feb. 18, 2008) and O (Report on Progress of Probationer, dated March 18, 2008) to Ancora Br.) In a memorandum to the Department of Personnel dated March 5, 2008,

Vacca noted that Plaintiff's performance continued to be unsatisfactory and thus requested Notice of Termination. (Ex. P to Ancora Br., Memorandum by Doris Vacca, dated March 5, 2008.) She further stated that Plaintiff "fails to follow directions/instructions regarding various aspects of the responsibilities," that she declined Vacca's offer for additional time to learn the staffing system because she "worked in the office previously and . . . knew how to . . . do the schedules," and that she continued to make a number of "serious" errors which involved staff schedules and inappropriate coverage. (Id.)

In a letter to Plaintiff dated March 14, 2008, Alfred Filippini, Manager 2, Human Resources, informed Plaintiff that she was being terminated from employment effective March 17, 2008, due to her overall work history—poor attendance, not following directions regarding aspects of her job—and the fact that her unsatisfactory performance had not improved. (Ex. R to Ancora Br., Letter from Alfred Filippini, Human Resources Manager to Plaintiff, dated March 14, 2008.) Plaintiff was informed that she had the right to appeal the decision of the unsatisfactory rating on her probationary report pursuant to state law within a set amount of time.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court

weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 F. App'x. 353, 354 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province

of the fact finder, not the district court.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.   DISCUSSION**

"Under Title VII, to make a prima facie showing of race discrimination, a plaintiff must demonstrate that: (1) he or she belongs to a protected class; (2) he or she was qualified for the position; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination."  Coleman v. Pennsylvania State Police, 2014 WL 1064379, at *5 (3d Cir. 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)); see also Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410-411 (3d Cir. 1999).

As to the fourth prong of the prima facie case, whether Ancora's actions give rise to an inference of discrimination, "[c]ommon circumstances giving rise to [such] an inference . . . include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class."  Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 487 (E.D.Pa.1999).  However, "[a]lthough a plaintiff may make out a prima facie case with such evidence, . . . neither of these is required."  Id. (citation omitted); see also Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999) (rejecting the interpretation that the fourth McDonnell Douglas prong required a plaintiff to prove that he was replaced by someone outside of his protected class).  Thus, the Court's "analysis of whether or not an inference of discriminatory animus has been raised by an employer's actions is governed by the 'central focus' of the prima facie case, that is, whether defendant treated plaintiff less favorably than other employees because of her race."  Williams-McCoy v. Starz

7

Encore Grp., No. 02-5125, 2004 WL 356198, at *6 (E.D. Pa. Feb. 5, 2004) (citing Sarulllo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003)).

After the plaintiff successfully demonstrates a prima facie case, the burden shifts to the defendant employer to articulate a "legitimate, non-discriminatory reason" for the adverse employment action. McDonnell Douglas, 411 U.S. at 802; Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000). If the defendant employer meets this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reasons offered by the defendants are mere pretext for discrimination. McDonnell Douglas, 411 U.S. at 804-805; Buchanan v. Pennsylvania, 47 F. App'x 117, 118 (3d Cir. 2002). To prove pretext, the plaintiff must "submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994))

Here, Plaintiff has established a prima facie case of racial discrimination. First, she belongs to a protected class. Second, although the record indicates that she made mistakes during the course of her employment, there is no issue as to whether she was qualified in the first instance; indeed, Plaintiff passed the Civil Service Examination required for employment as a Tech 3. Third, Plaintiff was subject to an adverse employment action, i.e., she was terminated from employment. And fourth, there is sufficient evidence that supports the inference that Plaintiff's termination occurred under circumstances that give rise to an inference of

8

discrimination; namely, that her position was filled by a white employee,[3] and that white employees were given preferential treatment over black employees.[4]

As to whether Ancora has articulated a legitimate and non-discriminatory reasons for Plaintiff's termination of employment, the Court concludes that Plaintiff's supposed inability to properly perform the functions of her job and her recurring attendance problems would qualify as such. However, the Court also concludes that Plaintiff has set forth sufficient evidence that would allow the factfinder to infer that discrimination was more likely than not a motivating or

---

[3] (See Ex. 1G to Pl.'s Opp'n Br., Statement of Sylvia Bey (stating that Vacca filled Plaintiff's position with a white employee after Plaintiff was terminated); see also Ex. 1K to Pl.'s Opp'n Br., Statement of Kevin Norman ("She did replace her with a white female named Taran Amicone.").) The Court notes that Ancora appears to argue that certain of the statements made by Ancora employees in connection with the EEOC investigation into Plaintiff's complaint of discrimination would be hearsay, while others would be admissible testimony. Ancora does not, however, specifically identify which statements fall into which camp. That being said, "the Third Circuit has held that hearsay evidence may be considered at the summary judgment stage if the 'declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial.'" Rossi v. Schlarbaum, 600 F.Supp.2d 650, 665 (E.D. Pa. 2009) (quoting J.F. Feeser, Inc. v. ServA–Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990). Here, Plaintiff could certainly produce as witnesses these employees; accordingly, the Court will consider these statements in resolving the instant motion.

[4] (See Ex. 1G to Pl.'s Opp'n Br., Statement of Sylvia Bey (stating that white employee was never punished for failing to do her work, taking long lunches, and leaving work early, whereas black employee was yelled at for taking long lunches, and Vacca would publicly humiliate black employees, but not white employees); see also Ex. 1H to Pl.'s Opp'n Br., Statement of Stacey Gilbert (stating that Vacca regularly talked "with dominance" and down to black employees when they needed to take days off, but would be overly solicitous of white employees, she would also publicly humiliate black employees, but would not do the same to white employees, and white employees were allowed to take vacation days without issue, but black employees encountered greater difficulty); Ex. 1I to Pl.'s Opp'n Br., Statement of Donna Main (stating that Vacca would "pinpoint the black employees and say nasty things about them and it was every single week [whereas a] white person could do the same mistakes and it would never be brought up," black employees were singled out by Vacca during meetings during which time Vacca would complain about them and refer to them as "those people" who "can't do anything," and Vacca would publicly humiliate black employees, but not white employees); Ex. 1K to Pl.'s Opp'n Br., Statement of Kevin Norman (stating that the way that Vacca "talks to white people versus the way she talks to black people. In job performance, when two people make the same mistakes, one person white and the other black, she always speaks more harshly regarding the same issue to the black people.").)

determinative cause of Plaintiff's termination, and thus Ancora's legitimate and non-discriminatory reasons for Plaintiff's termination are mere pretext.[5]

Although Ancora cites to Plaintiff's attendance history as one of the causes for her termination, the record also shows that white employees were not subject to the same standards with regard to work absences and tardiness. See note 5 supra. Further, although Ancora attributed Plaintiff's termination to her unsatisfactory work performance, the record also shows that after two months of employment, she received a "satisfactory" rating, and that the errors she subsequently made were typical errors made by other employees without similar incident.[6] Further, although Vacca characterized Plaintiff as unwilling to train and unwilling to learn, the record shows that Plaintiff sought out training opportunities, but Vacca subsequently interfered with Plaintiff's ability to learn.[7]

---

[5] Ancora also argues that Plaintiff's deposition testimony contradicts and undermines any claim for race discrimination. (Ancora Br. 8.) Indeed, a review of Plaintiff's testimony seems to reveal that at one point Plaintiff stated that her case did not have anything to do with her race. (Pl.'s Dep. 60:5-61:15.) Upon closer review, however, the issue is not at all clear. First, it appears that Plaintiff was uncomfortable with counsel's questions and the wording of those questions, and thought she may have needed legal representation. Second, although Ancora argues that this statement applies to Plaintiff's race discrimination claim as a whole, it seems from the context of the questioning that Plaintiff's point was that her mandatory probation was in violation of state law and not necessarily because of her race. That being said, due to Plaintiff's pro se status, her apparent confusion during the deposition, along with the other evidence currently before the Court, it will be up to a jury to evaluate Plaintiff's testimony along with the other evidence produced, and decide whether her claim of race discrimination has any merit.

[6] (See Ex. 1I to Pl.'s Opp'n Br., Statement of Donna Main (stating that Plaintiff did not make any more mistakes than the average person); Ex. 1K to Pl.'s Opp'n Br., Statement of Kevin Norman ("I have been around the employees in the office since 2001, and if a white person does the same mistake, she seems more aggressive towards African-Americans who make the same exact mistakes. In fact I have seen more mistakes from the Caucasian female than any of the African Americans. She took [Plaintiff's] building away from her meaning her scheduling responsibilities for the building and also Latifah Seely, an African American female, this is one of the most productive people in my office and Vacca took her building away for a schedule period.")

[7] (See Ex. 1H to Pl.'s Opp'n Br., Statement of Stacey Gilbert (stating that although Vacca assigned her to train Plaintiff, Vacca would not allow her to give her work so she could not train her. "I had got to a point when I said this is wrong and I started showing her things without [Vacca] knowing and then when she found out and [Plaintiff] start[ed] getting better and things were correct [Vacca] moved me to another shift. She just seemed to have it in for

Based on this evidence, the Court finds that summary judgment is inappropriate, and thus Ancora's motion as to Plaintiff's Title VII claim will be denied.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Ancora's motion. An appropriate order shall issue today.


Dated: 9/5/2014                                                s/ Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge

---

[Plaintiff] because [Plaintiff] stood up for herself."); Ex. 1K to Pl.'s Opp'n Br., Statement of Kevin Norman ("For the areas [Plaintiff] had problems she requested training but she never got it as far as I know.").)